[No. D022596. Fourth Dist., Div. One. Feb. 24, 1995.]

BRISTOL-MYERS SQUIBB COMPANY et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
CAROL JO JONES, Real Party in Interest.

**COUNSEL**

Haight, Brown & Bonesteel, Thomas Moore, Jeffrey B. Margulies and Nancy E. Lucas for Petitioners.

No appearance for Respondent.

Robins, Kaplan, Miller & Ciresi and Bruce A. Finzen for Real Party in Interest.

## OPINION

**FROEHLICH, J.**—We here review the denial of summary judgment in one of the breast implant cases currently under administration by the San Diego County Superior Court (see *McGhan Medical Corp.* v. *Superior Court* (1992) 11 Cal.App.4th 804 [14 Cal.Rptr.2d 264]). We find the case appropriate for writ relief because our intervention will terminate an action which otherwise would unnecessarily burden the superior court (see *Whitney's at the Beach* v. *Superior Court* (1970) 3 Cal.App.3d 258, 266 [83 Cal.Rptr. 237]), and we publish the decision because it deals with an application of the one-year statute of limitations provision (Code Civ. Proc., § 340, subd. (3)) to medical products liability which appears not previously to have received precise attention and which will likely have application to other cases presently pending (Cal. Rules of Court, rule 976(b)).

Defendants' motion for summary judgment was based on the contentions (1) that there was no factual dispute as to plaintiff's knowledge of her injury and (2) that she was on notice of the likely negligent cause of the injury, many years before the date of her lawsuit. The court denied the motion upon its conclusion that "even if all of defendants' evidence were uncontroverted, reasonable minds could differ as to whether a reasonable person in plaintiff's circumstances would have or should have suspected that her injuries were caused by defendants' wrongdoing, such that this is a question of fact for the trier of fact. The court does not find that plaintiff's knowledge or suspicion that her implant had ruptured, that silicone had moved into her arm, or that the ulcerations were caused by that [happening] is sufficient to show as a matter of law that plaintiff should have suspected that her alleged autoimmune injuries were caused by defendants' wrongdoing." Defendants contend that the trial court misconstrued existing authority by requiring, as the basis for "inquiry notice," that the plaintiff not only know of her injury, and know or suspect that its cause was negligence on the part of someone, but that plaintiff also be on notice of the specific nature of the negligence and the identity of the perpetrator. We agree with defendants that the court erred in this construction of present authority.

### FACTUAL BACKGROUND

The facts are not seriously in dispute, but insofar as there is a difference in their construction we state them as may be favorable to the position of the plaintiff. In 1976 plaintiff received two silicone-gel-filled breast implants performed by Dr. James J. Ryskamp. Plaintiff was dissatisfied with the implants and the doctor replaced them the same year with larger breast prostheses. In 1982 plaintiff was involved in an altercation with another

woman which resulted in severe battery to her upper torso. Shortly thereafter plaintiff noticed that her right breast appeared to be getting smaller and a lump appeared under her right arm. Plaintiff believed that her implant had ruptured and that silicone had migrated to her underarm. She saw Dr. Ryskamp for these symptoms, and was told that it was not possible for the silicone from the ruptured implant to be in her arm.

Shortly thereafter plaintiff sought the advice of a second physician, Dr. Mitts. Dr. Mitts confirmed plaintiff's suspicions, namely that the implant had ruptured and the lump in her arm was silicone. Dr. Mitts performed surgery to remove the ruptured implant and to attempt removal of the migrated silicone. The doctor reported to plaintiff that he was unable to remove much of the silicone, which caused plaintiff to be "worried . . . upset."

Subsequently, in June 1984, plaintiff consulted additional physicians with respect to her arm problems. At that time plaintiff knew that silicone had migrated down her arm and that it was causing her physical injury. Beginning in 1984 or 1985 plaintiff suffered ulcerations in her arm which became progressively worse. She believed that the battery on her breast had caused the silicone to migrate into her arm and that the silicone was causing the ulcerations. This suspicion was confirmed by a specialist at Stanford University Medical Center in, apparently, 1984. Plaintiff began to experience difficulty in her work as a waitress and was forced to quit work in 1986. She has received disability benefits since 1985.

In 1982 or 1983 plaintiff consulted an attorney concerning her claim for damages against her battery assailant. In October 1993 a complaint was filed against this individual and several Does. Also in 1983 plaintiff consulted more than one attorney concerning a possible claim against Dr. Ryskamp. Plaintiff told a malpractice attorney: "I felt I had been injured and wanted to know whether or not [the attorney] felt that I had a case against Dr. Ryskamp." None of these contacts resulted in the bringing of any lawsuit.

Finally, plaintiff contacted Attorney Liccardo's office in 1990 or 1991. She had been referred to the firm after reading a newspaper article in December 1990 which mentioned the existence of a breast implant support group. Before reading the article, plaintiff had never heard nor had ever received any information that breast implants might be causing women problems. She "never suspected that her implant manufacturers might be responsible for her injuries until she had contacted the Liccardo firm after December 1990." Plaintiff's action in this case was then filed on April 1, 1991.

**BELOW IS A PASTE-OVER CRACK-AND-PEEL INSERT FOR CORRECTION OF AN ERROR IN THE BOUND VOLUME REPORT OF BRISTOL-MYERS SQUIBB CO. v. SUPERIOR COURT, 32 CAL.APP.4th 959, AT PAGE 962, LINES 24–30 (THE THIRD NEW PARAGRAPH ON THE PAGE).**

Please remove the correction insert from the peel-off backing and position it to cover lines 24–30 of page 962.

\* In 1982 or 1983 plaintiff consulted an attorney concerning her claim for damages against her battery assailant. In October 1983 a complaint was filed against this individual and several Does. Also in 1983 plaintiff consulted more than one attorney concerning a possible claim against Dr. Ryskamp. Plaintiff told a malpractice attorney: "I felt I had been injured and wanted to know whether or not [the attorney] felt that I had a case against Dr. Ryskamp." None of these contacts resulted in the bringing of any lawsuit.

## DISCUSSION

The standard statutory period for bringing an action for personal injury is one year, the commencement of the period being on the date of injury or the later date of discovery by the plaintiff of the injury and its negligent cause.[1] (Code Civ. Proc., § 340, subd. (3).) The application of the statute to malpractice and products liability cases was explained in *Jolly* v. *Eli Lilly & Co., supra,* 44 Cal.3d at pages 1110-1111: "Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her. [Fn. omitted.] As we said in *Sanchez* and reiterated in *Gutierrez,* the limitations period begins once the plaintiff ' "has notice or information or circumstances to put a reasonable person *on inquiry"* ' *(Gutierrez* [v. *Mofid* (1985)] 39 Cal.3d [892] at pp. 896-897 [218 Cal.Rptr. 313, 705 P.2d 886], quoting *Sanchez* [v. *South Hoover Hospital* (1976)] 18 Cal.3d [93] at p. 101 [132 Cal.Rptr. 657, 553 P.2d 1129] (italics added by the *Gutierrez* court)). A plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery. Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her."

It is to be noted that this formulation of the rule does not posit the question of whether or when a plaintiff *could,* by the exercise of reasonable diligence, have discovered the act of negligence.[2] ■ The time starts running when the plaintiff knows of the injury and has "a suspicion of

---

[1]Code of Civil Procedure section 340.5, dealing specifically with actions for malpractice against health care providers, states that the one-year period commences on "the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first." The more general provision for the limitations period for personal injury, as contained in Code of Civil Procedure section 340, subdivision (3), states simply that an action for "injury to or for the death of one caused by the wrongful act or neglect of another" must be brought "within one year." Case authority has engrafted onto the provision the "discovery rule" specifically contained in section 340.5. *(Jolly* v. *Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1109 [245 Cal.Rptr. 658, 751 P.2d 923].) Hence, the rule governing the commencement of the statutory one-year period is the same whether the defendant is a medical doctor (or other health provider) or a manufacturer of a medical device.

[2]Code of Civil Procedure section 340.5 phrases the formula as the time when the plaintiff discovers "or through the use of reasonable diligence should have discovered" the injury. Under this definition it would appear a defense to an assertion of commencement of the statutory period to show that the plaintiff could not, by any means of investigation, have discovered the negligent cause of the injury. An example in the breast implant cases, for instance, would be a period during which there was simply no published evidence, and no knowledge among the medical community, of the potentially deleterious effects of migrating

wrongdoing." The existence of such knowledge (or imputed knowledge based on an objective standard of what the plaintiff should suspect) is a factual determination presumptively in the domain of the jury. Where, however, "the uncontradicted facts established through discovery are susceptible of only one legitimate inference, summary judgment is proper." (*Jolly* v. *Eli Lilly & Co.*, *supra*, 44 Cal.3d at p. 1112.) Since the investigation is not for the purpose of establishing sure knowledge of another's fault, but only a suspicion, the rendition of summary judgment in favor of defendants based on the one-year statute is more common than might initially be supposed.

In *Sanchez* v. *South Hoover Hospital* (1976) 18 Cal.3d 93 [132 Cal.Rptr. 657, 553 P.2d 1129], for instance, where the plaintiff suffered injuries from a botched Caesarean section, a factor in determining the start of the statutory period was the admission that plaintiff knew that "something [had gone] wrong" and "believed she had been a victim of malpractice." (*Id.* at p. 102.) A recent case illustrating the same principle is *Goldrich* v. *Natural Y Surgical Specialties, Inc.* (1994) 25 Cal.App.4th 772 [31 Cal.Rptr.2d 162]. There the plaintiff experienced absolutely horrible results from several implant attempts, ultimately electing a "transverse abdominal island flap" instead of a foreign implant. Mrs. Goldrich's explanation that she had no reason to suspect malpractice because she believed the cause of her injuries was her body's rejection of the implant was rejected by the Court of Appeal, in part we believe, because she sought the advice of several implant specialists, all of whom recommended permanent removal of the implants. In light of her obvious concern about the failure of her implants, the court decided it could conclude as a matter of law that she must have had, or at least a reasonable person would have had, a strong suspicion of malpractice. (*Id.* at p. 780.)

Several lines of cases are distinguishable from this principle. Everyone knows, for instance, that medical procedures do not always turn out well. The mere fact that an operation does not produce hoped-for results does not signify negligence and will not cause commencement of the statutory period. For instance, the fact that the plaintiff in *Unjian* v. *Berman* (1989) 208 Cal.App.3d 881 [256 Cal.Rptr. 478] looked worse after his plastic surgery operation than before it does not imply as a matter of law the suspicion of negligence. In *Kilburn* v. *Pineda* (1982) 137 Cal.App.3d 1046 [187 Cal.Rptr. 548] the court refused to find constructive notice of negligence when recurrent back operations failed to produce beneficial results, stating that

---

silicone. As we shall see, *infra*, however, this concept and the suggested defense do not appear viable.

"even where an operation leads to rare and unforeseen injuries, malpractice will not be inferred." (*Id.* at p. 1049.)[3]

Another line of cases establishing a basis for noncommencement of the statutory period is that in which there exists a logical conclusion for the injury which does not point to negligence on the part of anyone. Illustrative of these cases is *Ward* v. *Westinghouse Canada, Inc.* (9th Cir. 1994) 32 F.3d 1405. The plaintiff in this case suffered wrist and arm problems which he thought, and which he was advised, were related to his long hours of work at his computer. Plaintiff was clearly aware of his injury (even seeking referral to a workers' compensation specialist) but reasonably considered it to be a normal result of overwork. The court concluded that this situation did not reasonably put plaintiff on inquiry notice of the possibility of a defectively designed keyboard to his computer, which would afford him a cause of action against the computer manufacturer. Akin to this ruling is the result in *Hills* v. *Aronsohn* (1984) 152 Cal.App.3d 753 [199 Cal.Rptr. 816], in which nodes in breast implants were reasonably explained to the plaintiff as nonnegligent occasional results of silicone injection. (*Id.* at p. 760.)

We believe it is important to remember that the formula in *Jolly* is (1) knowledge of injury, and (2) knowledge of facts creating, or which in a reasonable person would create, a suspicion of negligence *on the part of someone*. To start the commencement of the statutory period it is not necessary that the plaintiff be able to identify the negligent party. In *Jolly*, for instance, the plaintiff's excuse for not filing her cause of action was that she did not know which, out of perhaps hundreds of manufacturers, had prepared the estrogen diethylstilbestrol (DES) which her mother had ingested, causing later injury to the plaintiff. This was no cause, the court held, for not filing suit. (*Jolly* v. *Eli Lilly & Co., supra*, 44 Cal.3d at p. 1110.) Also instructive in this regard is *Gray* v. *Reeves* (1977) 76 Cal.App.3d 567 [142 Cal.Rptr. 716]. The defendant doctor in that case prescribed a certain drug for treatment of the plaintiff's hepatitis. The drug was manufactured by McKesson Laboratories. The result of ingestion of the drug was wholly unanticipated and caused severe damage to the plaintiff's hip socket. This injury to a completely unrelated part of the body was sufficient cause, the court found, to put plaintiff on notice of the possible negligence of the

---

[3]Seemingly contrary to this line of authority is *Snow* v. *A.H. Robins Co.* (1985) 165 Cal.App.3d 120 [211 Cal.Rptr. 271]. There the plaintiff suffered an unwanted pregnancy when using a Dalkon shield for contraception. She waited too long to bring suit because she understood that even a nondefective shield failed to preclude pregnancy in 1 to 2 percent of cases, and she thought she was simply one of the unlucky percent. Perhaps the court considered the failure rate to be so low (only 1 to 2 percent) that when failure occurred to the plaintiff she should have suspected something was wrong. (This approach, however, is not explicitly stated in the opinion.)

prescribing physician. "That the drug was negligently prescribed was a matter constructively within [plaintiff's] knowledge and he is chargeable with knowledge of the fact." (*Id.* at p. 577.) Accordingly, the plaintiff was required to bring his action within one year of such knowledge. Interestingly, the court held that the statute also commenced at the same time as to the action against the drug manufacturer, McKesson.

■ We are driven, therefore, to a conclusion as to the commencement of the statute of limitations respecting plaintiff, Mrs. Jones. There is no question about her awareness of her injury. She knew as early as 1982 that her implant had ruptured and that silicone was migrating, to her detriment. She then sought medical treatment from her existing physician, Dr. Ryskamp, and was dissatisfied with his services. She subsequently sought other medical advice specifically because of her dissatisfaction. She admittedly considered an action for malpractice against Ryskamp. As a matter of law the plaintiff knew of her damage and injury and knew or at least actually suspected that someone had been negligent. She had an obligation at that point to seek her legal remedy by suit. Certainly as late as 1984 or 1985, when plaintiff was suffering ulcerations of her arm concededly caused by silicone, she was aware of facts necessitating the commencement of a cause of action.

Plaintiff's argument is that while she may have had cause to sue Dr. Ryskamp she had no basis for believing she had an action against the manufacturer of the silicone. She had been told, and she believed, that silicone was an inert substance which by itself would cause no harm, and plaintiff attributed all her difficulties either to the intentional tortfeasor who battered her or to her initially treating physician. As *Jolly* teaches us, however, this excuse will not suffice. When a plaintiff has cause to sue based on knowledge or suspicion of negligence the statute starts to run as to *all* potential defendants.

The rationale for this result is explained in *Bernson* v. *Browning-Ferris Industries* (1994) 7 Cal.4th 926 [30 Cal.Rptr.2d 440, 873 P.2d 613]: "Although never fully articulated, the rationale for distinguishing between ignorance of the wrongdoer and ignorance of the injury itself appears to be premised on the commonsense assumption that once the plaintiff is aware of the injury, the applicable limitations period (often effectively extended by the filing of a Doe complaint) normally affords sufficient opportunity to discover the identity of all the wrongdoers. As we explained in *Jolly* v. *Eli Lilly & Co., supra*, 44 Cal.3d 1103 (rejecting the plaintiff's assertion that her ignorance of the particular manufacturer of the drug which caused her injuries tolled the statute): '[P]laintiff could have filed a timely complaint

under [Code Civ. Proc.] section 474, which allows suit to be filed against a Doe party. From the time such a complaint is filed, the plaintiff has three years to identify and serve the defendant. [Citations.] Hence, in the instant case, plaintiff could have brought a timely Doe action, effectively enlarging the statute of limitations period for three years.' (*Id.* at p. 1118.) Because the plaintiff in *Jolly* was aware of some of the manufacturers, she could have utilized the normal procedure of filing suit against them, naming Doe defendants, and then taking discovery to identify the remainder. That, indeed, is the normal situation for which the fictitious name statute, Code of Civil Procedure section 474, is designed: when the plaintiff is ignorant of the name of 'a defendant,' the plaintiff must file suit against the known wrong-doers, and, when the Doe's true name is discovered, the complaint may be amended accordingly. [Code Civ. Proc., § 474.]" (*Bernson* v. *Browning-Ferris Industries*, *supra*, at pp. 932-933.)

Plaintiff knew or at least suspected that she had an action for malpractice in 1984 or 1985. She knew the identity of the defendant she then thought to be the principal target, Dr. Ryskamp. The statute of limitations on her malpractice action therefore commenced to run at that point. It commenced not only as to known defendants but also as to unknown defendants, including the moving parties in this petition. Since plaintiff's action was not filed until April 1991, the one-year statute clearly had run.

Let a writ of mandate issue ordering the superior court to vacate its order denying the defendants' motion for summary judgment, and to enter a new order granting the motion.

Benke, Acting P. J., and Huffman, J., concurred.

A petition for a rehearing was denied March 23, 1995, and the petition of real party in interest for review by the Supreme Court was denied May 11, 1995. Mosk, J., was of the opinion that the petition should be granted.