[No. B190431. Second Dist., Div. Seven. Nov. 20, 2007.]

GAIL MARIE HARRINGTON-WISELY et al., Plaintiffs and Appellants, v. THE STATE OF CALIFORNIA et al., Defendants and Respondents.

COUNSEL

Litt, Estuar, Harrison & Kitson, Barrett S. Litt and Paul J. Estuar for Plaintiffs and Appellants.

Edmund G. Brown, Jr., Attorney General, David S. Chaney and Frances T. Grunder, Assistant Attorneys General, Michelle Des Jardins and Rene L. Lucaric, Deputy Attorneys General, for Defendants and Respondents.

---

OPINION

PERLUSS, P. J.—Gail Marie Harrington-Wisely and several additional plaintiffs (collectively, Wisely) appeal from the stipulated judgment entered after the trial court granted summary adjudication on 10 causes of action in favor of the State of California, the California Department of Corrections (CDC) (now California Department of Corrections and Rehabilitation; Gov. Code, § 12838), the California State Prison at Lancaster and several prison officials (collectively, government defendants) in this action arising out of the search of visitors to 11 California prisons. We dismiss Wisely's appeal because the stipulated judgment is not an appealable judgment or order.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *California State Prisons' X-ray and Search of Visitors*

From 1999 through March 2001, 11 institutions operated by the CDC required all visitors to pass through a backscatter X-ray machine, the Secure 1000, as a means of detecting concealed weapons and contraband, such as money and narcotics. The Secure 1000 discharged low-level backscatter X-rays that penetrated a few centimeters into a person's skin, producing a spectral-like computer image of the body, including an outline of breasts, genitalia and folds of skin. If an image showed a gray or darkened area that could not be conclusively identified, visitors were required to undergo an unclothed visual inspection. Darkened areas were found to include feminine-hygiene products, breast implants, brassiere underwire and diapers. Visitors who did not agree to be screened with the Secure 1000 were denied access to

the prison and told they may be subject to an unclothed visual inspection on future visits.

### 2. *The Initial Complaint; Suspension of Use of the Secure 1000*

On March 30, 2000 Wisely filed a class action complaint alleging violations of state and federal constitutional rights, and several tort claims relating to the use of the Secure 1000. On March 23, 2001, after Wisely had moved for a preliminary injunction, the CDC directed the institutions to discontinue use of the Secure 1000 until further notice. The CDC agreed it would provide 90 days' notice before resuming use of the Secure 1000 to give Wisely time to renew her motion for a preliminary injunction.

### 3. *The Fifth and Sixth Amended Complaints and Motions to Strike*

On June 6, 2003 Wisely filed a fifth amended complaint seeking damages and injunctive relief, which included claims under title 42 United States Code section 1983 for violation of visitors' federal constitutional rights; a claim for violation of the right to privacy protected by the California Constitution, article I, section 1; a claim under Civil Code section 52.1[1] for damages, including treble damages made available pursuant to Civil Code section 52;[2]

---

[1] Civil Code section 52.1 provides in part, "(a) If a person or persons, whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state, the Attorney General, or any district attorney or city attorney may bring a civil action for injunctive and other appropriate equitable relief in the name of the people of the State of California, in order to protect the peaceable exercise or enjoyment of the right or rights secured. An action brought by the Attorney General, any district attorney, or any city attorney may also seek a civil penalty of twenty-five thousand dollars ($25,000). If this civil penalty is requested, it shall be assessed individually against each person who is determined to have violated this section and the penalty shall be awarded to each individual whose rights under this section are determined to have been violated. [¶] (b) Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (a), may institute and prosecute in his or her own name and on his or her own behalf a civil action for damages, including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured."

[2] Civil Code section 52 provides in part, "(a) Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51, 51.5, or 51.6, is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be

claims for violation of a mandatory duty under Government Code section 815.6;[3] and claims for negligence and negligent supervision.[4] Wisely alleged, among other things, the state violated prison visitors' constitutional rights by X-raying them as a condition of entry into the prison, without reasonable suspicion the visitors had contraband or posed a threat to prison security.[5]

On October 24, 2003 the trial court granted the government defendants' motion to strike references to damages under Civil Code section 52, subdivision (a), holding a state prison is not a business establishment, a prerequisite to recovering damages under the statutory scheme.

On November 18, 2003 Wisely filed a further amended complaint, removing reference to treble damages under Civil Code section 52, subdivision (a), but seeking civil penalties and exemplary damages under Civil Code section 52, subdivision (b). On February 4, 2004 the court granted the government defendants' motion to strike all claims for damages (including civil penalties characterized as damages) under Civil Code section 52, subdivision (b).

4. *The Motions for Summary Adjudication; the Court's Ruling on Its Sua Sponte Motion for Reconsideration*

Following additional motion and pleading practice by the parties, on July 1, 2005 the court granted the government defendants' motion for summary adjudication on the first 10 causes of action in the then operative complaint, holding Wisely was not entitled to damages because all government defendants enjoyed qualified immunity and Wisely had failed to meet various

---

determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6. [¶] (b) Whoever denies the right provided by Section 51.7 or 51.9, or aids, incites, or conspires in that denial, is liable for each and every offense for the actual damages suffered by any person denied that right and, in addition, the following: [¶] (1) An amount to be determined by a jury, or a court sitting without a jury, for exemplary damages. [¶] (2) A civil penalty of twenty-five thousand dollars ($25,000) to be awarded to the person denied the right provided by Section 51.7 in any action brought by the person denied the right, or by the Attorney General, a district attorney, or a city attorney. An action for that penalty brought pursuant to Section 51.7 shall be commenced within three years of the alleged practice. [¶] (3) Attorney's fees as may be determined by the court."

[3] Government Code section 815.6 provides, "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

[4] The amended complaint also asserted claims against the manufacturers of the Secure 1000, which were ultimately resolved on summary judgment.

[5] On October 15, 2003 the trial court certified a class comprised of visitors scanned with the Secure 1000 from approximately March 19, 1999 through March 23, 2001 as a condition of a prison visit. The class was certified for purposes of determining liability, but not damages, and divided into subclasses based on the prison visited.

statutory prerequisites for the recovery of damages. The court, however, denied summary adjudication of the final cause of action asserted against the government defendants, styled as a taxpayer's suit seeking declaratory and injunctive relief.

On September 22, 2005, in a ruling on the trial court's sua sponte motion for reconsideration, the court clarified that its summary adjudication ruling barred Wisely from proceeding on her class claims only to the extent they sought damages. All claims seeking injunctive and declaratory relief remained in the action.

### 5. *The Stipulation and Order Regarding Entry of Judgment and Right to Appeal*

On March 7, 2006, on the eve of trial on Wisely's claims for injunctive relief, the parties filed an executed stipulation and request for an order entering final judgment, which was "intended to allow for the immediate entry of final judgment." The stipulation and order re: entry of final judgment and right to appeal (Stipulation and Order) clearly states judgment will be entered in favor of the government defendants on all damages claims: "Upon full execution of this Order, judgment will be entered in favor of the Government Defendants based on the court's grant of summary adjudication on all causes of actions and claims for damages." No similar language appears with respect to Wisely's causes of action and claims for equitable relief regarding current use of the Secure 1000, which are neither the subject of a court-ordered injunction nor dismissed, as moot or otherwise. Instead the Stipulation and Order refers only to the parties' agreement and the CDC's intentions.

With respect to the Secure 1000, the parties agreed the CDC would dispose of all but one of the Secure 1000 machines; the remaining Secure 1000 machine would be retained solely for use as an exhibit in the event the damages claims were ultimately tried. The parties also agreed, if the CDC decided to use backscatter X-ray technology within seven years after entry of final judgment, the court would hold a hearing to "decide if, or under what standards or protocols, the [CDC] may again use backscatter or similar technology on visitors." Sixteen potential issues to be decided by the court were enumerated, and the Stipulation and Order provides the court "shall retain jurisdiction to enforce the terms of the *agreement* . . . ." (Italics added.)

The Stipulation and Order further provides, "This is the complete agreement of the Parties. This Order shall constitute the final judgment in this case and shall be entered forthwith. It is only appealable as stipulated." The court signed the stipulation and order on March 7, 2006 under the sentence, "IT IS SO ORDERED AND JUDGMENT IS ENTERED."

## DISCUSSION

■ The existence of an appealable judgment or order is a jurisdictional prerequisite to an appeal. (*Jennings v. Marralle* (1994) 8 Cal.4th 121, 126 [32 Cal.Rptr.2d 275, 876 P.2d 1074]; *Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 696 [107 Cal.Rptr.2d 149, 23 P.3d 43].) "A reviewing court must raise the issue on its own initiative whenever a doubt exists as to whether the trial court has entered a final judgment or other order or judgment made appealable by Code of Civil Procedure section 904.1." (*Jennings*, at p. 126.) Accordingly, although the parties plainly anticipated Wisely would immediately appeal from the "final judgment" to the extent it was based on the trial court's adverse rulings disposing of all causes of action and claims for damages[6] and no question of our jurisdiction was presented in the briefs submitted on the damages issues, we must determine at the threshold whether we are authorized to decide Wisely's appeal.[7]

Two interrelated defects preclude us from exercising jurisdiction in this matter. Normally, a final judgment is appealable. (Code Civ. Proc., § 904.1, subd. (a)(1).) In this case, however, although providing for entry of a "final judgment," the Stipulation and Order does not formally resolve on the merits any of Wisely's claims for injunctive and declaratory relief—that is, the portions of the first through 10th causes of action that requested equitable relief, in addition to damages, or the 15th cause of action, which sought only declaratory and injunctive relief. (See Code Civ. Proc., § 577 ["judgment is the final determination of the rights of the parties in an action or proceeding"]; *Sullivan v. Delta Air Lines, Inc.* (1997) 15 Cal.4th 288, 304 [63 Cal.Rptr.2d 74, 935 P.2d 781] [" 'judgment is final "when it terminates the litigation between the parties on the merits . . ." ' "].)[8] As discussed, the Stipulation and Order recites the parties' agreement concerning the CDC's disposal of all but one of the Secure 1000 machines and the procedure for maintaining but not operating the remaining device. Unlike the provision of the Stipulation and Order regarding Wisely's damages claims, which expressly states judgment will be entered in favor of the government defendants as to those claims, this separate portion of the Stipulation and Order regarding claims for injunctive relief as to current use of the Secure 1000 does not provide for entry of an injunction or other form of judgment in favor of Wisely, nor does it require dismissal of those remaining claims, whether as

---

[6] The Stipulation and Order provides, "Plaintiffs' time to appeal these rulings will begin from the entry of judgment." The parties, of course, cannot create appellate jurisdiction by stipulation or consent. (*Don Jose's Restaurant, Inc. v. Truck Ins. Exchange* (1997) 53 Cal.App.4th 115, 118–119 [61 Cal.Rptr.2d 370]; *Norman I. Krug Real Estate Investments, Inc. v. Praszker* (1990) 220 Cal.App.3d 35, 47 [269 Cal.Rptr. 228].)

[7] We requested the parties provide supplemental briefing on the issue of our jurisdiction.

[8] The eleventh, twelfth, thirteenth and fourteenth causes of action of the operative complaint did not name the government defendants. (See fn. 4, *ante*.)

moot or otherwise. In light of this conspicuous omission, although labeled "final," the judgment is in effect a nonappealable interlocutory decision. (See *Jackson v. Wells Fargo Bank* (1997) 54 Cal.App.4th 240, 244 [62 Cal.Rptr.2d 679] [no effect can be given to "final judgment" label "if the judgment does not *in fact* conclude matters between the parties"].) Whether the parties elected to draft their stipulation and proposed order in this manner to avoid giving an advantage to one side or the other in their upcoming battle over Wisely's entitlement to attorney fees or in an attempt to ensure the trial court could properly retain jurisdiction to decide issues regarding any future use by the government defendants of backscatter X-ray technology to screen prison visitors—an issue we consider below—the result is that, notwithstanding their desire to seek immediate appellate review of the damages rulings, we have no jurisdiction to consider those issues.

While contending the judgment entered by the trial court is appealable, Wisely (but not the government defendants) urges us to treat the order as appealable even if we determine it is not. Although Wisely correctly points out that some appellate courts—most recently the Sixth Appellate District in *Sisemore v. Master Financial, Inc.* (2007) 151 Cal.App.4th 1386, 1396 [60 Cal.Rptr.3d 719]—have deemed an order sustaining a demurrer without leave to amend, a nonappealable order, to incorporate a judgment of dismissal to avoid delay because the omission was of a "formality" only and appeared to be due to an oversight (see *Thaler v. Household Finance Corp.* (2000) 80 Cal.App.4th 1093, 1098 [95 Cal.Rptr.2d 779]), as a general rule this court does not entertain appeals from nonappealable orders. (E.g., *Munoz v. Florentine Gardens* (1991) 235 Cal.App.3d 1730, 1732 [1 Cal.Rptr.2d 609] [dismissing appeal from nonappealable order dismissing case for failure to prosecute].) Moreover, in addition to the failure of the Stipulation and Order to resolve Wisely's claims for injunctive relief, the stipulated judgment agreed to by the parties and entered by the trial court is not appealable because it leaves open for future determination a variety of issues between the parties.

■ In most instances a stipulated judgment is not appealable. (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 400 [87 Cal.Rptr.2d 453, 981 P.2d 79] (*Norgart*) [" 'by consenting to the judgment or order the party expressly waives all objection to it, and cannot be allowed afterwards, on appeal, to question its propriety' "].) An exception to this rule permits an appeal " '[i]f consent was merely given to facilitate an appeal following adverse determination of a critical issue . . . .' [Citation.]" (*Id.* at p. 400.) The critical issue in *Norgart* was the date of accrual of the plaintiffs' causes of action for wrongful death under the "discovery rule" for statute of limitations purposes. (*Id.* at p. 402.) The Norgarts consented to entry of summary judgment in

favor of Upjohn following an adverse determination of that issue by the Court of Appeal in another case (*Bristol-Myers Squibb Co. v. Superior Court* (1995) 32 Cal.App.4th 959 [38 Cal.Rptr.2d 298]),[9] a ruling that appeared to be dispositive of Upjohn's motion for summary judgment. (*Norgart*, at p. 393.) The Supreme Court explained it was wasteful of trial court time to require the plaintiffs to undergo a probably unsuccessful trial merely to obtain an appealable judgment whether the probable lack of success was caused by an adverse determination in the trial court itself or by an appellate court either in the same action or another. (*Id.* at p. 402; see *Aloha Pacific, Inc. v. California Ins. Guarantee Assn.* (2000) 79 Cal.App.4th 297, 306, fn. 6 [93 Cal.Rptr.2d 148] [appeal permitted from stipulated judgment entered after trial court denied plaintiff's motion for summary judgment, finding on undisputed facts defendant/responding party should prevail as a matter of law; readily apparent from procedural background that parties' consent to judgment given only pro forma to facilitate appeal].)

Under the *Norgart* exception, if Wisely had agreed to dismiss all claims for equitable relief (with or without an additional agreement with the government defendants concerning discontinuation of any use of the Secure 1000) and simply consented to entry of a judgment on the damages claims, the stipulated judgment would be appealable. However, the exception may not be invoked when, as here, the stipulated judgment fails to dispose of all claims between the parties. (*Tudor Ranches, Inc. v. State Comp. Ins. Fund* (1998) 65 Cal.App.4th 1422, 1429–1430 [77 Cal.Rptr.2d 574] [stipulated judgment that does not dispose of all claims between parties is not appealable]; *Four Point Entertainment, Inc. v. New World Entertainment, Ltd.* (1997) 60 Cal.App.4th 79 [70 Cal.Rptr.2d 82] [judgment before court was " 'final' in name only" because, in substance, it did not dispose completely of all claims between parties].)

■ The stipulated judgment leaves a wide variety of constitutional and statutory issues open for determination by the trial court relating, in the words of the Stipulation and Order, to "plaintiffs' claims for injunctive relief regarding potential future use of the backscatter X-ray technology" by the CDC, specifically reserving to a future date a ruling by the trial court on the

---

[9] The Court of Appeal in *Bristol-Myers Squibb Co. v. Superior Court, supra,* 32 Cal.App.4th 959 held a plaintiff discovers or has reason to discover a cause of action as to all defendants when he or she has reason to suspect a factual basis for the elements of his or her claim as to any one defendant—sometimes referred to as the principle of imputed simultaneous discovery of causes of action. Although the Supreme Court disapproved *Bristol-Myers* on another ground in *Norgart, supra,* 21 Cal.4th at page 410, footnote 8, it did not review the central holding of the case.

question, "if, or under what standards or protocols, the [CDC] may again use backscatter or similar technology on visitors."[10] Determination of these issues is not, as Wisely somewhat disingenuously argues, mere enforcement of the terms of the stipulated judgment. The court will be required to decide whether to allow the CDC to reintroduce backscatter X-ray technology to screen prison visitors and, in doing so, would be asked to resolve significant and complex issues, necessitating the exercise of substantial discretion, not simply evaluate whether the CDC is complying with the terms and conditions of a settlement agreement or consent decree. (See *Griset v. Fair Political Practices Com.*, *supra*, 25 Cal.4th at pp. 698–699 ["a judgment is a final determination of the rights of the parties. . . . 'It is not the form of the decree but the substance and effect of the adjudication which is determinative. As a general test, which must be adapted to the particular circumstances of the individual case, it may be said that where no issue is left for future consideration except the fact of compliance or noncompliance with the terms of the first decree, that decree is final, but where anything further in the nature of judicial action on the part of the court is essential to a final determination of the rights of the parties, the decree is interlocutory' " (citations omitted)]; accord, *Lyon v. Goss* (1942) 19 Cal.2d 659, 670 [123 P.2d 11]; *Olson v. Cory* (1983) 35 Cal.3d 390, 399 [197 Cal.Rptr. 843, 673 P.2d 720].)

■ We have serious doubts about the propriety (and enforceability) of the parties' agreement to place the trial court in what is essentially the role of a mediator or arbitrator under the guise of maintaining jurisdiction to enforce the terms of the judgment. Indeed, issues relating to the future use of backscatter technology do not appear to be encompassed by the operative complaint, which is limited to resolving the parties' dispute over use of the Secure 1000. Those concerns aside, because it requires further judicial action in this case if the CDC attempts to use backscatter technology in the future, the Stipulation and Order does not finally dispose of the injunctive relief claims and is not now an appealable final judgment. (*Griset v. Fair Political Practices Com.*, *supra*, 25 Cal.4th at p. 697.)

---

[10] In an appendix, incorporated by reference in the Stipulation and Order, the parties identify at least 16 issues to be resolved in the future, including "[w]hether the procedures or protocols to be employed by the [CDC] regarding the use of the new technology shall be uniform and consistent for each prison, and whether there are standards to ensure that procedures are implemented consistently"; "[w]hether there are clearly articulated and appropriate standards for when and how physical searches will be conducted based on the images generated by the technology, including the standards for such searches, the extent of such searches, the justifications for different types of such searches, and the role of supervisors in such searches"; "[w]hether the new technology uses the most current and advanced privacy protection technology available for such machines"; and "[w]hether there are standards in place to ensure that no demeaning, insulting or otherwise objectionable comments are made regarding the visitor in connection with the scan."

## DISPOSITION

The appeal is dismissed. The parties shall bear their own costs on appeal.

Woods, J., and Zelon, J., concurred.

A petition for a rehearing was denied December 6, 2007, and appellants' petition for review by the Supreme Court was denied February 20, 2008, S159488.