Filed 1/7/21  Smith v. Yamamoto CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| SHENITHA SMITH et al., | B296961 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC635054) |
| v. | |
| JON YAMAMOTO, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Mark C. Kim, Judge.  Affirmed.

Law Offices of Neil M. Howard, Neil M. Howard; Esner, Chang & Boyer, Stuart B. Esner and Kevin K. Nguyen for Plaintiffs and Appellants.

Cole Pedroza, Kenneth R. Pedroza, Alysia B. Carroll, Danica Lam; Law + Brandmeyer and Yuk K. Law for Defendant and Respondent.

————————————————

Appellants Shenitha Smith and Richard Fort'e sued Dr. Jon Yamamoto for negligence and wrongful death in connection with his treatment of their newborn daughter. A jury found Appellants' claims against Yamamoto were time-barred under Code of Civil Procedure section 340.5.[1] Appellants contend the trial court erred when it instructed the jury with Judicial Council of California Civil Jury Instructions No. 555 (CACI 555). We conclude the trial court did not err because CACI 555 is an accurate statement of the law regarding the statute of limitations in section 340.5. We affirm the judgment.

## FACTS

On July 5, 2014, Smith was admitted to Providence Little Company of Mary Medical Center–San Pedro (San Pedro Medical Center) to give birth to her daughter, Ri'nitha Fort'e, whom Appellants called Sade. Sade was transferred to Providence Little Company of Mary Medical Center–Torrance (Torrance Medical Center) shortly after her birth due to critical respiratory issues.

Yamamoto is a neonatologist at Torrance Medical Center. He cared for Sade after her transfer. He updated Appellants as to Sade's condition throughout the time she was under his care. Sade died on the morning of July 6, 2014.

On April 28, 2015, Appellants timely sued San Pedro Medical Center and the obstetrician who treated Smith, alleging medical malpractice and wrongful death. On June 25, 2015, Appellants filed a doe amendment adding Torrance Medical

---

[1] All further section references are to the Code of Civil Procedure unless otherwise specified.

2

Center as a defendant.  Appellants settled the first lawsuit with all three defendants.

On September 30, 2016, Appellants filed suit against Yamamoto, alleging his negligent treatment of Sade resulted in her death.[2]  Among other things, Yamamoto argued Appellants' claims were time-barred.  The trial was bifurcated to allow the statute of limitations issue to be tried first.

A jury trial commenced on February 14, 2019, on the statute of limitations issue.  Yamamoto described the circumstances which led to Sade's transfer to Torrance Medical Center.  He also testified he introduced himself to Appellants, updated them about Sade's condition multiple times, and received their permission to perform various procedures to help her breathe.  After her death, he told them an autopsy might help establish a cause of death that was not immediately apparent, such as a congenital defect.  Appellants consented to an autopsy.

Appellants' attorney, Neil Howard, testified the first lawsuit included a personal injury claim by Smith as well as a wrongful death claim arising from Sade's death.  Appellants initially sued San Pedro Medical Center and Smith's obstetrician because they believed they provided negligent prenatal, labor, and delivery care to Smith.  In the first lawsuit, Howard discovered and informed Appellants that some of Sade's organs were retained by Torrance Medical Center during the autopsy.  As a result, Appellants authorized him to add Torrance Medical Center to the lawsuit.

---

[2]    Appellants also named Dr. Soledad Austin, a doctor at San Pedro Medical Center, in the second lawsuit.  Austin's motion for summary judgment was unopposed and granted.  She is not a party to this appeal.

3

Howard further testified he did not have facts supporting wrongful conduct by Yamamoto until August 2016, one year after the initial lawsuit was filed. He explained he first learned of a potential claim against Yamamoto when he hired a neonatal expert to counter the summary judgment motion filed by the defendants in the initial lawsuit. That expert indicated Sade would likely have survived if not for Yamamoto's negligence.

The parties initially stipulated to a modified version of CACI 555. CACI 555 reads: "[Name of defendant] contends that [name of plaintiff]'s lawsuit was not filed within the time set by law. To succeed on this defense, [name of defendant] must prove that before [insert date one year before date of filing], [name of plaintiff] discovered, or knew of facts that would have caused a reasonable person to suspect, that [he/she/nonbinary pronoun] had suffered harm that was caused by someone's wrongful conduct." (Italics and bold omitted.)

The parties modified CACI 555 to substitute the phrase "someone's wrongful conduct" for "Dr. Yamamoto's wrongful conduct" such that the last sentence read: "To succeed on this defense, Dr. Yamamoto must prove that on or before July 6, 2015, Shenitha Smith and Richard Fort'[e] discovered, or knew of facts that would have caused a reasonable person to suspect, that they had suffered harm that was caused by Dr. Yamamoto's wrongful conduct."

Prior to closing arguments, however, Yamamoto requested the court change the instruction back to its original phrasing: "Dr. Yamamoto contends that Shenitha Smith and Richard Fort'e's lawsuit was not filed within the time set by law. To succeed on this defense, Dr. Yamamoto must prove that on or before July 6, 2015, Shenitha Smith and Richard Fort'e

4

discovered, or knew of facts that would have caused a reasonable person to suspect, that they had suffered harm that was someone's wrongful conduct." Yamamoto's proposed verdict form tracked CACI 555.

Appellants objected to Yamamoto's proposed instruction and special verdict form, arguing the instruction should specifically reference Yamamoto's conduct because if it simply read "someone's wrongful conduct," the jury could infer San Pedro Medical Center's wrongful conduct triggered the limitations period as to the claims against Yamamoto.

The trial court accepted Yamamoto's instruction and special verdict form, observing CACI 555 did not allow for alternate language to replace "someone's wrongful conduct" with the name of the specific defendant. The court acknowledged Appellants' position, however, and prohibited Yamamoto from arguing at closing that Appellants had notice or could reasonably suspect Yamamoto was negligent simply from their knowledge of wrongful conduct by San Pedro Medical Center or Smith's obstetrician. The court nevertheless expressly allowed Yamamoto to argue Appellants named Torrance Medical Center in the first lawsuit, not because of the autopsy results, but because they knew Sade was provided negligent care while she was there.

The jury found against Appellants on the statute of limitations issue, and judgment was entered on March 6, 2019. They timely appealed.

## DISCUSSION

Appellants argue CACI 555 "preordained" a defense verdict because it improperly allowed Yamamoto to assert Appellants were on notice that Sade's death was the result of "someone's

5

wrongful conduct" at the time they retained counsel and filed the first lawsuit. According to Appellants, their knowledge that Smith was treated negligently at San Pedro Medical Center did not put them on notice of Yamamoto's negligence in treating Sade at Torrance Medical Center. Appellants rely on the Supreme Court's opinion in *Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797 (*Fox*) to argue CACI 555 does not apply to cases, such as this one, that involve separate acts of wrongdoing.

We conclude the trial court properly instructed the jury with CACI 555 because it is an accurate statement of the law. Moreover, *Fox* has not invalidated the "someone's wrongful conduct" language found in CACI 555. Even if it did, *Fox* is inapplicable to this case because Appellants' claims do not encompass separate types of wrongdoing as identified in *Fox*.

## I. Standard of Review

A jury instruction should be an accurate statement of the law; as brief and concise as possible; understandable to the average juror; and neutral, unbiased and free of argument. (*Morales v. 22nd Dist. Agricultural Assn.* (2016) 1 Cal.App.5th 504, 526–527; Cal. Rules of Court, rule 2.1050(e).) A party is entitled upon request to correct, nonargumentative instructions on every theory of the case advanced by him which is supported by substantial evidence. (*Ibid.*) " '[T]he duty of the court is fully discharged if the instructions given by the court embrace all the points of the law arising in the case. [Citations.] [¶] A party is not entitled to have the jury instructed in any particular phraseology and may not complain on the ground that his requested instructions are refused if the court correctly gives the substance of the law applicable to the case.' " (*Davis v. Honeywell Internat. Inc.* (2016) 245 Cal.App.4th 477, 495.)

"We review de novo whether a challenged instruction correctly states the law." (*Bowman v. Wyatt* (2010) 186 Cal.App.4th 286, 298.) Appellate court opinions may be a source for jury instructions. (*Suman v. Superior Court* (1995) 39 Cal.App.4th 1309, 1321–1322.) The use of standard instructions approved by the Judicial Council, such as CACI, is "strongly encouraged." (Cal. Rules of Court, rule 2.1050(e).) "If the latest edition of the jury instructions approved by the Judicial Council contains an instruction applicable to a case and the trial judge determines that the jury should be instructed on the subject, it is recommended that the judge use the Judicial Council instruction unless he or she finds that a different instruction would more accurately state the law and be understood by jurors. Whenever the latest edition of the Judicial Council jury instructions does not contain an instruction on a subject on which the trial judge determines that the jury should be instructed, or when a Judicial Council instruction cannot be modified to submit the issue properly, the instruction given on that subject should be accurate, brief, understandable, impartial, and free from argument." (*Ibid.*) However, standard jury instructions " 'are not themselves the law, and are not authority to establish legal propositions or precedent.' [Citation.]" (*People v. Diaz* (2015) 60 Cal.4th 1176, 1187, fn. 6.)

## II.  The Statute of Limitations for Medical Malpractice Cases

In medical malpractice cases, a plaintiff must commence an action within "three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first." (§ 340.5.)

Accrual under the "delayed discovery rule" occurs as of the date the plaintiff suspects the injury, the cause of injury, and the tortious nature of the conduct causing the injury. (*Fox, supra,* 35 Cal.4th at p. 808; *Gutierrez v. Mofid* (1985) 39 Cal.3d 892, 896.) "[I]n order to employ the discovery rule to delay accrual of a cause of action, a potential plaintiff who suspects that an injury has been wrongfully caused must conduct a reasonable investigation of all potential causes of that injury. If such an investigation would have disclosed a factual basis for a cause of action, the statute of limitations begins to run on that cause of action when the investigation would have brought such information to light." (*Fox, supra,* at pp. 808–809.)

## III.   CACI 555 Is An Accurate Statement of the Law

Appellants argue CACI 555 improperly provides it is the discovery or knowledge of "someone's wrongful conduct," rather than the specific defendant's conduct, that triggers the limitations period. We are not persuaded.

The phrase "someone's wrongful conduct" tracks the Supreme Court's holding in *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1110 (*Jolly*). There, the court held that "[u]nder the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that *someone has done something wrong to her.*" (*Ibid.*, italics added.)

In *Jolly,* the plaintiff's claims were time-barred because she was aware the defective product caused her injuries as early as 1972, but delayed filing her action until 1981 because she did not know the identity of its manufacturer. (*Jolly, supra,* 44 Cal.3d at pp. 1107–1108.) The *Jolly* court rejected the notion that a plaintiff must have knowledge of facts indicating wrongdoing by a

8

particular defendant.  (*Id.* at pp. 1110–1111.)  Instead, the "plaintiff could have filed a timely complaint under section 474, which allows suit to be filed against a Doe party.  From the time such a complaint is filed, the plaintiff has three years to identify and serve the defendant.  [Citations.]  Hence, in the instant case, plaintiff could have brought a timely Doe action, effectively enlarging the statute of limitations period for three years." (*Id.* at p. 1118.)

The holding in *Jolly* has been applied in numerous cases. (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 399 (*Norgart*) ["the plaintiff may discover, or have reason to discover, the cause of action even if he does not suspect, or have reason to suspect, the identity of the defendant."]; *Bernson v. Browning–Ferris Industries* (1994) 7 Cal.4th 926, 932 ["Aggrieved parties generally need not know the exact manner in which their injuries were 'effected, nor the identities of all parties who may have played a role therein.' "]; *Knowles v. Superior Court* (2004) 118 Cal.App.4th 1290, 1299 (*Knowles*).)

In *Knowles, supra*, 118 Cal.App.4th at page 1293, the decedent underwent two different surgeries on consecutive days and died three days after the second surgery.  (*Ibid.*)  The decedent's wife immediately ordered an autopsy, obtained the medical records, and, along with her children, timely filed suit against the doctors who performed the second surgery.  (*Id.* at p. 1294.)  During the course of discovery, the plaintiffs' lawyer consulted with an expert who opined the doctor who performed the first surgery, Knowles, may also have been negligent. Knowles was added to the suit two years after the decedent's death.  He moved for summary judgment based on expiration of

9

the statute of limitations, and the trial court denied the motion. (*Ibid.*)

The appellate court reversed the denial of summary judgment, holding the statute of limitations against Knowles commenced as a matter of law shortly after the decedent's death because that was when the plaintiffs first suspected medical negligence caused his death. (*Knowles, supra,* 118 Cal.App.4th at pp. 1294, 1298.) While the plaintiffs argued they did not specifically suspect Knowles was negligent until the expert opined on it, the court found the cause of action against Knowles was within the scope of their initial suspicion of medical negligence: "They knew, or should have known, that Knowles had performed the initial surgery, and they suspected that some form of medical malpractice caused [decedent's] death four days later." (*Id.* at p. 1300.)

The court explained it was not the expert's opinion but the plaintiffs' suspicion of negligence that triggered the limitations period. (*Knowles, supra,* 118 Cal.App.4th at p. 1300.) The facts supported only one conclusion—the limitations period commenced as to all three surgeons as soon as the decedent suffered appreciable harm (his death), which caused the plaintiffs to become suspicious of wrongdoing. (*Id.* at p. 1301.)

We are persuaded by *Jolly* and *Knowles* that CACI 555 is an accurate statement of the law. As discussed in those cases, a cause of action does not accrue based on discovery of wrongdoing by a particular defendant. Instead, the statute of limitations begins to run in a medical malpractice case when a plaintiff suspects "someone" has done something wrong to him or her. (*Jolly, supra,* 44 Cal.3d at p. 1110.)

10

Just as in *Jolly* and *Knowles*, the cause of action against Yamamoto was within the scope of Appellants' initial suspicion of medical negligence involving Sade's death, even if Appellants could not immediately identify all of the tortfeasors involved. Here, Appellants knew Yamamoto provided care for Sade after her transfer and they suspected some form of medical malpractice had caused her death one day after she was born. Under the holding in *Knowles*, the limitations period commenced as soon as Sade suffered appreciable harm, i.e., her death, which caused Appellants to become suspicious of wrongdoing. At that point, Appellants were required to investigate all potential causes of the harm. (*Fox, supra,* 35 Cal. 4th at p. 808.) "So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." (*Jolly*, *supra*, 44 Cal.3d at p. 1111.)

We are not persuaded by Appellants' attempt to invalidate the reasoning in *Knowles*. Appellants argue *Knowles* is unsound because it relied on *Bristol-Myers Squibb Co. v. Superior Court* (1995) 32 Cal.App.4th 959 (*Bristol-Meyers*), which was disapproved in *Norgart*, *supra*, 21 Cal.4th at page 407 and *Fox*, *supra,* 35 Cal.4th at page 802. *Bristol-Myers, supra,* at page 966, held that "[w]hen a plaintiff has cause to sue based on knowledge or suspicion of negligence the statute starts to run as to *all* potential defendants." The *Knowles* court explained that in *Bristol-Myers,* the "court held that a plaintiff's suspicion of a surgeon's medical malpractice triggers the statute of limitations for a products liability claim against the manufacturer of materials used in the surgery. [Citation.] Unlike the products liability claim at issue in [*Bristol–Myers*], [the plaintiffs'] wrongful death causes of action against Knowles were within the

11

scope of their initial suspicion of medical negligence." (*Knowles, supra,* 118 Cal.App.4th at p. 1300.) Thus, *Knowles* did "not rely on the imputed discovery doctrine developed in [*Bristol–Myers*], to resolve this case." (*Ibid*.) Contrary to Appellants' assertion, the reasoning in *Knowles* has not been invalidated by the Supreme Court and remains good law.

## IV.  The Supreme Court Did Not Invalidate CACI 555 in *Fox*

Neither are we persuaded by Appellants' argument that CACI 555, as written, is inapplicable to cases involving two discrete acts of wrongdoing. According to Appellants, the *Fox* court rejected the "someone's wrongful conduct" standard for delayed discovery when it rejected the imputed discovery doctrine articulated in *Bristol-Myers*.

We decline to extend *Fox's* disapproval of *Bristol-Myers* to CACI 555. As we discussed above, CACI 555 is an accurate statement of the law as articulated in *Jolly* and its progeny, including *Knowles*. *Fox* did not reject the holding in *Jolly* that "the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her." (*Jolly, supra,* 44 Cal.3d at p. 1110.) Indeed, *Fox* cited *Jolly* with approval throughout the opinion and observed, "the application of the discovery rule as articulated in this opinion would not have yielded a different result had it been applied in either *Jolly* or *Norgart*." (*Fox, supra,* 35 Cal.4th at p. 814.)

Moreover, CACI 555 specifically cites *Arroyo v. Plosay* (2014) 225 Cal.App.4th 279, 286 (*Arroyo*), discussed below, as a source and authority for the instruction. Following *Fox, Arroyo* addressed whether the delayed discovery rule applies when two

12

distinct types of wrongdoing or injury are involved. It is clear the drafters of CACI 555 were aware of this issue and declined to revise CACI 555 in the way urged by Appellants. That is, the drafters declined to flout well-established law that holds a cause of action may accrue even if the plaintiff does not know the identity of the defendant. (*Norgart, supra,* 21 Cal.4th at p. 399; *Bernson v. Browning–Ferris Industries, supra,* 7 Cal.4th at p. 932.)

Even if we were to interpret *Fox* to invalidate the "someone's wrongful conduct" language in CACI 555, *Fox* does not apply here because Appellants' claims do not involve two distinct types of wrongdoing as contemplated in that case. In *Fox*, the plaintiff filed a medical malpractice action against her surgeon and the treating hospitals after gastric bypass surgery performed on her resulted in severe complications. The surgeon testified in his deposition a medical device used during the surgery may have malfunctioned, causing her injury. As a result of this information, the plaintiff amended her complaint to add a products liability cause of action against the manufacturer of the device. The manufacturer's demurrer on statute of limitations grounds was granted by the trial court. (*Fox, supra,* 35 Cal.4th at p. 802.)

The *Fox* court reversed. It explained the plaintiff need not know the legal theories underlying the claim to trigger the statute of limitations. All that is required is that the plaintiff have a reason to suspect a factual basis for the "generic" elements of a cause of action: "wrongdoing, causation, and harm." (*Fox, supra,* 35 Cal.4th at pp. 806–807, quoting *Norgart, supra,* 21 Cal.4th at pp. 397–398 & fn. 2.) It reasoned, "As the allegations in this case illustrate, a diligent plaintiff's

13

investigation may only disclose an action for one type of tort (e.g., medical malpractice) and facts supporting an entirely different type of tort action (e.g., products liability) may, through no fault of the plaintiff, only come to light at a later date.  Although both claims seek to redress the same physical injury to the plaintiff, they are based on two distinct types of wrongdoing and should be treated separately in that regard." (*Fox, supra,* at pp. 814–815.)

The *Fox* court relied on *Jolly* and *Norgart* to hold "[i]t is therefore consistent with our prior applications of the discovery rule to delay accrual of a products liability cause of action even when a related medical malpractice claim has already accrued, unless the plaintiff has reason to suspect that his or her injury resulted from a defective product.  More broadly stated, if a plaintiff's reasonable and diligent investigation discloses only one kind of wrongdoing when the injury was actually caused by tortious conduct of a wholly different sort, the discovery rule postpones accrual of the statute of limitations on the newly discovered claim." (*Fox, supra,* 35 Cal.4th at p. 813.)  The court found the plaintiff had no reason to suspect a defective product caused her injury until the surgeon's deposition since she did not know a stapler would be used for her surgery and neither the operative report nor the reparative operative report indicated the stapler had malfunctioned.  (*Id.* at p. 805.)

Appellants also rely on *Arroyo, supra,* 225 Cal.App.4th at page 286 to argue CACI 555, as written, does not apply where there are two discrete acts of wrongdoing.  In *Arroyo,* the decedent's relatives initially suspected her body was mishandled by the hospital after her death, resulting in disfigurement to her face and causing emotional distress to the family.  The plaintiffs later learned from their medical expert that the hospital and her

14

doctor may have prematurely declared her dead and placed her in a compartment in the hospital morgue while she was still alive. The expert opined the decedent ultimately froze to death after she incurred the disfiguring injuries to her face while trying to escape. (*Arroyo, supra,* at p. 282.)

As in *Fox,* the plaintiffs in *Arroyo* initially discovered one type of tort but later discovered a distinct and separate type of tort. Although the plaintiffs asserted causes of action for medical malpractice, the "injury"—defined as wrongdoing, causation, and harm—underlying each cause of action was not the same. (*Arroyo, supra,* 225 Cal.App.4th at p. 292.) In the first medical malpractice cause of action, the wrongdoing consisted of the mishandling of the decedent's body after death, causing disfigurement to the decedent's face, and resulting in the harm of plaintiffs' emotional distress upon learning of those postmortem injuries. In the claims for medical malpractice and wrongful death, the wrongdoing consisted of the premature declaration of death and placement in the morgue while still alive, causing the decedent to freeze in the morgue, and resulting in death. (*Id.* at p. 292.) *Arroyo* held the accrual of a medical malpractice and wrongful death cause of action based on the later-discovered information was delayed under the discovery rule. (*Ibid.*)

*Fox* and *Arroyo* are distinguishable because Appellants' causes of action do not encompass two distinct types of wrongdoing or injury as discussed in those cases. Both lawsuits assert the same wrongdoing—medical negligence—in connection with Sade's death. Appellants' first action addressed negligent treatment at San Pedro Medical Center during the prenatal, labor, and delivery period that resulted in Sade's death. The second action addressed the negligent treatment at Torrance

15

Medical Center during the postnatal period that resulted in Sade's death. Contrary to Appellants' arguments, these are not distinct types of wrongdoing or injury. Instead, the negligence cause of action against Yamamoto was encompassed within the scope of Appellants' initial suspicion of medical negligence.

Appellants contend, "this action is no different than a victim of an automobile accident who obtains medical treatment for her injuries. Of course, the plaintiff is on notice that her injuries are the result of the negligence of the driver of the other vehicle. But this does not mean that she is also on notice that there was negligence by the treating physician who treated the plaintiff for those injuries." We agree this scenario reflects the facts of *Fox* and *Arroyo* and the delayed discovery rule may apply there.

However, Appellants' scenario does not reflect the facts of this case. This case is more akin to when the victim suffers two automobile accidents on consecutive days. While the victim may initially believe one accident caused her injury, she is nevertheless on notice to inquire as to whether the other accident also caused her injury. Likewise, Appellant's suspicion that Sade had died as a result of medical negligence required them to investigate other potential tortfeasors whose medical negligence may have also caused her death.

**DISPOSITION**

The judgment is affirmed.  Yamamoto to recover his costs on appeal.


BIGELOW, P. J.


We concur:



STRATTON, J.



WILEY, J.