[No. A065008. First Dist., Div. Four. May 16, 1994.]

RICHARD FRANK KLEEFELD, Petitioner, v.
THE SUPERIOR COURT OF SOLANO COUNTY, Respondent;
WILLIAM CUNNINGHAM, Real Party in Interest.

COUNSEL

Schuering, Zimmerman, Scully & Nolen and John J. Sillis for Petitioner.

No appearance for Respondent.

James Cameron for Real Party in Interest.

OPINION

**ANDERSON, P. J.**—Petitioner Richard Frank Kleefeld, D.C. (defendant), contends a malpractice action against him is barred by the one-year statute of limitations found in Code of Civil Procedure section 340.5 (section 340.5). We agree and issue the peremptory writ he requests.

On October 17, 1990, Darline Cunningham died of a ruptured aortic aneurysm. Five days later, her husband, real party in interest, William Cunningham (plaintiff), contacted the Board of Chiropractic Examiners (Board) expressing his concern that defendant may have excessively treated his wife. In an interview with a Board investigator on January 15, 1991, plaintiff further expressed his view that inappropriate treatment by defendant might be the cause of his wife's death.[1] An investigation commenced which ultimately led to the discipline of defendant.

---

[1] The final report of the senior special investigator of the Board recites: " 'On January 15, 1991, I met with Bill Cunningham at his home in Suisun. Cunningham told me that he feels

On July 20, 1992, real party served notice of his intention to commence an action against defendant in accordance with section 364 of the Code of Civil Procedure and on October 21, 1992, two years after his wife's death, plaintiff filed his complaint.

Defendant moved for summary judgment on the ground that the action was barred by section 340.5. That section provides in relevant part that an action for injury or death against a health care provider must be commenced within "three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first. . . ." Defendant took the position that the one-year limitation applied since plaintiff had the requisite knowledge at the time of his wife's death as evidenced by his contact with the Board.

The court denied the motion on the ground that a triable issue of fact exists as to whether plaintiff used reasonable diligence in ascertaining if care given by defendant was within the standard of care and as to whether plaintiff could have known of sufficient facts prior to August 30, 1991, when he was informed of the Board's decision disciplining defendant.

The order denying summary judgment was filed on December 10, 1993. It was not mailed to defendant, however, and on March 4, 1994, defendant's counsel himself obtained a copy of the ruling from the court's files and filed a notice of entry of the order. Since defendant did not receive notice of the filing of the order until March 4, 1994, the instant petition challenging the order filed on March 14, 1994, was timely. (Code Civ. Proc., § 437c, subd. (*l*); see *Schmidt* v. *Superior Court* (1989) 207 Cal.App.3d 56, 60 [254 Cal.Rptr. 827].)

■ The parties agree that commencement of the statute of limitations is to be governed by the discovery rule of section 340.5. "Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that [his] injury was caused by wrongdoing, that someone has done something wrong to [him]. . . . [T]he limitations period begins once the plaintiff ' " 'has notice or information of circumstances to put a reasonable person *on inquiry* . . . .' " ' [Citations.] A plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery. Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, [he] must decide whether to file suit

---

his wife died because of something Dr. Kleefeld did to her during treatment.' " At deposition, plaintiff confirmed that he had called the Board on October 22, 1990, and met with the investigator on January 15, 1991. When asked if he had harbored his "own suspicion that there was something that Dr. Kleefeld did or did not do that caused your wife's death?" plaintiff responded: "Well, I felt like it was probably that he did not do."

or sit on [his] rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; [he] cannot wait for the facts to find [him]." (*Jolly* v. *Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1110-1111 [245 Cal.Rptr. 658, 751 P.2d 923], fn. omitted, italics in original.)

█ Plaintiff argues that he did not sit on his rights but was diligent in pursuing his suspicions regarding a connection between his wife's death and defendant's treatment and acted reasonably in contacting the Board. █ However, a plaintiff's diligence *after* he has become suspicious of wrongdoing is not relevant to the running of the statute of limitations. Diligence is only relevant to determine when he *should* have suspected wrongdoing. Once a plaintiff actually has the requisite suspicion, the statute of limitations commences to run. It is not tolled by efforts to learn more about the matter short of filing suit. "[R]egardless of extenuating circumstances, the patient must bring his suit within one year after he discovers, or should have discovered, his 'injury.' [Citation.]" (*Gutierrez* v. *Mofid* (1985) 39 Cal.3d 892, 896 [218 Cal.Rptr. 313, 705 P.2d 886].)

█ Plaintiff calls our attention to the case of *Steingart* v. *White* (1988) 198 Cal.App.3d 406 [243 Cal.Rptr. 678]. In that case the plaintiff discovered a lump in her breast in 1982 and defendant physician misdiagnosed the lump as benign. The plaintiff remained concerned but continued to treat with defendant until he neglected to examine her breast on one visit. In 1985 breast cancer was diagnosed by another physician and within one year of that diagnosis, plaintiff filed her action.

Summary judgment was granted and was reversed by the appellate court. That court was initially concerned with determining what the "injury" was so that it could determine when the three-year limitation commenced. The court reasoned that the "injury," within the meaning of section 340.5, did not occur in 1982 when the cancer was misdiagnosed. Rather, the "injury" occurred in 1985 when the "appreciable harm" was first manifested by the correct diagnosis. (*Steingart* v. *White*, *supra*, 198 Cal.App.3d at pp. 414-415.) As to the one-year limitation, the court ruled that under the facts presented, there remained "at minimum a triable issue of fact as to whether [plaintiff] exercised reasonable diligence after the purported misdiagnosis." (*Id.*, at p. 416)

There is a significant difference between *Steingart* and the instant case. █ The date of injury in a wrongful death cause of action is the date of death. (*Larcher* v. *Wanless* (1976) 18 Cal.3d 646, 659 [135 Cal.Rptr. 75, 557 P.2d 507].) █ We are not concerned with defining the nature of the "injury" or with plaintiff's knowledge of the fact of death. We are only

concerned with the time when plaintiff became suspicious that the cause of death might be related to the defendant's treatment. Plaintiff acknowledged that these suspicions occurred at or soon after the date of death. The one-year limitation commenced at that time and clearly had run well before the commencement of the action two years later. It was not tolled while the Board looked into plaintiff's concerns about defendant's treatment. ■ There is no tolling provision in the one-year limitation, not even for fraud or concealment, much less for the pursuit of evidence of negligence. (*Sanchez* v. *South Hoover Hospital* (1976) 18 Cal.3d 93, 101 [132 Cal.Rptr. 657, 553 P.2d 1129].)

■ It cannot be disputed on this record that plaintiff suspected that there was wrongdoing on the part of defendant at the time of his wife's death or shortly thereafter. His own deposition testimony and his actions in contacting the Board establish his suspicions. The one-year limitation had long run before he filed his action and defendant is entitled to summary judgment.

Let a peremptory writ of mandate issue directing respondent court to vacate its order denying summary judgment and to enter a new order granting the motion.

Perley, J., and Reardon, J., concurred.