Filed 8/26/20  Douglas v. Zimmerman CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ALAN DOUGLAS, | B294801 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC657529) |
| v. | |
| NANCY ZIMMERMAN et al., | |
| Defendants and Respondents. | |

APPEAL from judgments of the Superior Court of Los Angeles County.  William F. Fahey, Judge.  Affirmed.

Alan Douglas, in pro. per., for Plaintiff and Appellant.

Leibl, Miretsky & Mosely, Kathryn S.M. Mosely and Lee M. Moulin for Defendants and Respondents Timothy Daskivich and Cedars-Sinai Medical Center.

Reback, McAndrews & Blessey, Robert C. Reback, Tayaba Sarah Attar, and Stephen A. Diamond for Defendants and Respondents Nancy Zimmerman and Jay Neal Schapira.

————————————

**SUMMARY**

Plaintiff is a self-represented litigant who appeals from the judgments entered for defendants in two medical malpractice lawsuits. Plaintiff's appellate briefs violate several appellate rules, fail to make any cogent argument supported by citation to pertinent legal authorities, and raise irrelevant legal points that have no relation to his claims. This failure to comply with the rules governing appeals means that plaintiff has forfeited his claims on appeal. Even if he had not forfeited his arguments, we would still affirm the judgments against him. In one case, his claims are barred by the statute of limitations, and in the other, he presented no expert declaration to counter defendants' expert opinions that no malpractice occurred. We affirm the judgments.

**FACTS**

1. **The Background**

On January 29, 2016, plaintiff had a heart attack (myocardial infarction) that he thinks was caused by the negligence of one or more defendants. This is what happened before that event.

On January 15, 2016, plaintiff consulted with Dr. Timothy Daskivich, a urologist, for an evaluation of a prostate lesion. Plaintiff had a history of coronary artery disease and was taking daily low dose aspirin. Dr. Daskivich recommended plaintiff undergo a prostate biopsy to rule out prostate cancer. Plaintiff elected to do so. Dr. Daskivich sent plaintiff to plaintiff's cardiologist, Dr. Jay Schapira, to obtain prebiopsy clearance to abstain from nonsteroidal anti-inflammatories (NSAID's) and aspirin for seven days before the biopsy.

Plaintiff went to Dr. Schapira's office that same day, and was evaluated by Nancy Zimmerman, a nurse practitioner who

2

worked under Dr. Schapira's supervision. Ms. Zimmerman cleared plaintiff for the biopsy, concluding the biopsy was a low risk procedure and plaintiff was a low risk patient. She advised plaintiff he could hold NSAID's and aspirin therapy for seven days before the biopsy, and to resume as soon as possible after urologic clearance. Dr. Schapira signed off on Ms. Zimmerman's findings and recommendations.

On January 29, 2016, Dr. Daskivich performed the biopsy. After the biopsy, Dr. Daskivich's staff monitored plaintiff for worrisome symptoms, ensured he was able to urinate before leaving the doctor's office, and discharged him with follow-up instructions, allowing him to drive home.

Later the same day, plaintiff went to the emergency department of Cedars-Sinai Medical Center with complaints of chest pain. He was diagnosed with a myocardial infarction and admitted for care and treatment. He was discharged on January 31, 2016.

## 2. The Litigation

On January 25, 2017, less than a year after his heart attack, plaintiff served a notice of intent to file suit against Dr. Daskivich, specifically referring to the clearance for the biopsy and stopping the anticoagulants in advance of the biopsy as the negligent cause of his myocardial infarction and resulting cardiac tissue damage.

On April 11, 2017, plaintiff filed his complaint for medical malpractice against Dr. Daskivich.

On March 5, 2018, more than two years after his heart attack, plaintiff filed another lawsuit for medical malpractice against Dr. Schapira, Ms. Zimmerman and Cedars-Sinai Medical

3

Center. The operative second amended complaint was filed July 12, 2018.

On November 14, 2018, the two lawsuits were consolidated and assigned to Judge William F. Fahey for all purposes.

### a. Dr. Daskivich

On August 24, 2018, Dr. Daskivich filed a motion for summary judgment, supported by the opinion of Dr. Philip G. Pearson, a board-certified urologist practicing in that field since 1999. Dr. Pearson opined that the care and treatment of plaintiff by Dr. Daskivich and his staff were within the standard of care, for reasons he set forth at length, and that no conduct on their part was a substantial cause of plaintiff's subsequent myocardial infarction.

On October 30, 2018, plaintiff filed his opposition to Dr. Daskivich's summary judgment motion, but presented no expert opinion to counter the expert opinion of Dr. Pearson.

After a hearing on January 31, 2019, the trial court entered a minute order granting summary judgment to Dr. Daskivich (and to Cedars-Sinai, see *post*). After opposition from plaintiff, the court entered judgment in favor of Dr. Daskivich on February 19, 2019. Several days later, on February 22, 2019, the court issued an order addressed "to plaintiff in pro per" (capitalization omitted), stating the court found "no triable issues of material fact"; that "Dr. Daskivich complied with the applicable professional standards of care in his care and treatment of plaintiff"; and that "the actions of Dr. Daskivich were not a substantial cause of plaintiff's alleged injuries and damages."

4

### b.    Dr. Schapira and Ms. Zimmerman

On August 30, 2018, Dr. Schapira and Ms. Zimmerman demurred to plaintiff's second amended complaint on the ground it was time-barred by Code of Civil Procedure section 340.5. Under section 340.5, a claim based on a health care provider's professional negligence must be filed within "three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first." Defendants argued that the one-year provision applied.

Plaintiff filed his opposition on November 27, 2018.

A hearing was held on December 13, 2018. The following day, the court issued a minute order sustaining defendants' demurrer without leave to amend. The court described the operative complaint as alleging plaintiff "should not have been off blood thinning medication before he had a biopsy on January 26, 2016 [*sic*] and this caused his heart attack." Accordingly, the court concluded, plaintiff "was at a minimum put on inquiry notice as of that date" and the one-year statute of limitations began to run. The court further observed that in plaintiff's two "oversized and rambling oppositions," he failed to respond to defendants' arguments and authorities on the statute of limitations.

Judgment was entered in favor of Dr. Schapira and Ms. Zimmerman on January 18, 2019.

### c.    Cedars-Sinai

On November 16, 2018, Cedars-Sinai filed a motion for summary judgment on the ground plaintiff's complaint was barred by the statute of limitations, and alternatively, because Cedars-Sinai complied with the applicable standard of care in the

5

care and treatment provided to plaintiff. Its motion was supported by the declaration of Dr. Daniel Wohlgelernter, a board-certified cardiologist practicing in the Los Angeles area since 1985. He opined, giving reasons, that the cardiology clearance, ordering plaintiff to discontinue aspirin before the biopsy, was within the standard of care, and that no conduct on the part of Cedars-Sinai or its staff and nursing personnel was a substantial cause of plaintiff's myocardial infarction and heart tissue damage.

On December 5, 2018, plaintiff filed his opposition to Cedars-Sinai's motion for summary judgment, but again included no expert medical opinion. Cedars-Sinai filed its reply on January 23, 2019, pointing out (as did Dr. Daskivich) that plaintiff failed to submit the required expert evidence.

Two days later, plaintiff filed an opposition to Cedars-Sinai's reply, including as an exhibit an unsworn, undated letter, apparently from a doctor in New York State, stating that "[t]he malpractice was stopping the aspirin which directly caused the restenosis of the LAD stent which directly caused the [myocardial infarction]."

The trial court heard Cedars-Sinai's motion (along with Dr. Daskivich's) at the January 31, 2019 hearing and, as mentioned above, granted both motions. After various objections from plaintiff, on February 14, 2019, the court signed an order granting summary judgment to Cedars-Sinai. The court found that Cedars-Sinai "complied with the applicable professional standards of care in its care and treatment of plaintiff," and that "the actions of [Cedars-Sinai] were not a substantial cause of plaintiff's alleged injuries and damages." Judgment was entered for Cedars-Sinai that same day.

6

### d. Postjudgment filings and orders

In the wake of these unfavorable judgments, plaintiff filed four "ex parte applications" on March 15, 2019. He sought "default judgments" in both of the lawsuits, despite all defendants having already obtained judgments in their favor. He sought to file a peremptory challenge against Judge Fahey under Code of Civil Procedure section 170.6, and he sought to disqualify Judge Fahey under sections 170.1 (grounds for disqualification) and 170.3 (procedure). All these applications were denied on March 15, 2019.

Then, on March 28, 2019, plaintiff filed two further ex parte applications seeking to file a peremptory challenge and to disqualify Judge Fahey, plus a third ex parte application "to compel and enforce settlement." The first two were denied for lack of jurisdiction, because plaintiff had already appealed from the March 15 denial of the same motions. The third was denied because it should have been filed in Judge Fahey's court.

Plaintiff filed notices of appeal from the three judgments, from the March 15, 2019 order denying the four ex parte applications, and from the April 2, 2019 order denying the three subsequent ex parte applications.

## DISCUSSION

In the end, there are only two issues that merit discussion. These are whether the Zimmerman lawsuit was filed within the statute of limitations, and whether there was admissible evidence of any failure to comply with the applicable standard of care in the medical treatment provided to plaintiff. Plaintiff does not provide a cogent discussion of either of these issues, and accordingly forfeits them. But in any event, the legal answers are clear.

7

## 1.    Forfeiture

We will not burden this opinion with a description of the rules plaintiff has not followed in his appellate briefing.  (Cal. Rules of Court, rule 8.204.)  A review of his briefs makes this clear.  The flaws are not simply a matter of format; they are substantive.  We are unable to find any coherent legal argument that might conceivably justify a reversal of the judgments.  Instead, plaintiff's principal points seem to be that the statute of limitation is three years, not one year from the date of discovery of his injury; he is entitled to know which defendant ordered him to stop taking aspirin; the trial court's rulings were made with "gross bias and prejudice," partly on account of opposing counsel who presented incomplete expert testimony; and the rulings improperly contradicted "all evidence" presented in the entire record.  None of this is supported by coherent legal argument or pertinent legal authorities.

" 'In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record.' " (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 146.)  Plaintiff has not done so here, and accordingly has forfeited his claims of trial court error.  Even so, there was no error.

## 2.    The Demurrer Ruling—Statute of Limitations

A demurrer tests the legal sufficiency of the complaint.  We review the complaint de novo, and accept as true all material facts alleged, but not contentions, deductions or conclusions of fact or law.  We also consider matters that may be judicially noticed.  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

Here, the complaint shows that it is barred by the statute of limitations.  Plaintiff was required to file his medical

malpractice suit within "one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury." (Code Civ. Proc., § 340.5.) Plaintiff knew he was injured on the date of his heart attack, January 29, 2016. The complaint alleges that Dr. Daskivich sent plaintiff to plaintiff's cardiologist (Dr. Schapira), who had been treating him since 2012, "to obtain a medical clearance," and plaintiff had the biopsy "without the benefit of his blood thinning aspirin." (Indeed, plaintiff's own notice of his intention to file suit against Dr. Daskivich, on January 25, 2017, specifically states plaintiff "was asked to stop blood thinner, which caused 100% in-stent thrombosis.")

Plaintiff knew he was injured on January 29, 2016, or, as the trial court observed, at a minimum, plaintiff was on inquiry notice he had been injured on the date of his heart attack, and that is when the one-year statute of limitations began to run. It is clear plaintiff actually knew of the allegedly negligent cause of his injury—stopping the blood thinner—no later than January 25, 2017. Under either theory, actual or inquiry notice, his lawsuit filed on March 5, 2018, was not filed within one year of the time he "discover[ed], or through the use of reasonable diligence should have discovered, the injury" and its negligent cause. (See *Arroyo v. Plosay* (2014) 225 Cal.App.4th 279, 290 ["The one-year limitation period of [Code of Civil Procedure] section 340.5 is a codification of the discovery rule, under which a cause of action accrues when the plaintiff is aware, or reasonably should be aware, of 'injury,' a term of art which means 'both the negligent cause and the damaging effect of the alleged wrongful act.' "].)

9

We further note that, on appeal, plaintiff has the burden to demonstrate error in the trial court's judgment. But, as in the trial court, plaintiff's appellate briefs fail to address the ground on which the trial court sustained the demurrer—the statute of limitations—except to assert, without elaboration or discussion, that it is three years. As we have seen, that is not the case. The trial court properly sustained Dr. Schapira and Ms. Zimmerman's demurrer without leave to amend.

## 3. The Summary Judgment Rulings

A defendant moving for summary judgment must show "that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to the cause of action." (Code Civ. Proc., § 437c, subd. (p)(2).) Summary judgment is appropriate where "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (*Id.,* subd. (c).) Our review is de novo. (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037.)

In a medical malpractice case, a plaintiff must establish the health care provider failed to comply with the appropriate standard of care, and that this failure was a cause of the plaintiff's injury. " 'The standard of care against which the acts of a physician are to be measured is a matter peculiarly within the knowledge of experts; it presents the basic issue in a malpractice action and can only be proved by their testimony [citations], unless the conduct required by the particular circumstances is within the common knowledge of the layman.' " (*Landeros v. Flood* (1976) 17 Cal.3d 399, 410.)

Here, as we have related in the facts section, *ante*, both Dr. Daskivich and Cedars-Sinai presented the opinions of

qualified expert witnesses to establish their conduct complied with the applicable standards of care. To establish a dispute of fact on this issue, plaintiff had to present an expert's opinion, giving reasons, explaining how defendants failed to comply with the standard of care. Plaintiff did not do so.

In his reply brief, plaintiff points to the letter described above (p. 6, *ante*), to the effect that stopping the aspirin was malpractice. The letter was inadmissible on numerous grounds, among them that it is neither a sworn statement nor an unsworn statement declared to be true under penalty of perjury. (See Code Civ. Proc., § 2015.5; *Bozzi v. Nordstrom, Inc.* (2010) 186 Cal.App.4th 755, 761 ["Evidence in support of and in opposition to a summary judgment motion must be admissible, just like at trial."].) Without such evidence, plaintiff cannot prove his medical negligence claim. Accordingly, summary judgment was proper in both cases.

## 4. The Postjudgment Orders

Finally, there is no merit in plaintiff's appeals of the trial court's denial of his ex parte applications.

First, one cannot obtain a default judgment against defendants who have already obtained judgments in their favor.

Second, a peremptory challenge to a trial judge in a civil cause "that has been assigned to a judge for all purposes" must be made "within 15 days after notice of the all purpose assignment." (Code Civ. Proc., § 170.6, subd. (a)(2).) That happened on November 14, 2018, so plaintiff's application was untimely. Nor does the record reveal any legitimate ground for disqualification of Judge Fahey under sections 170.1 and 170.3, even if plaintiff's applications to do so, weeks after the entry of judgments against him, were procedurally proper.

11

Third, plaintiff's ex parte application to compel and enforce a settlement under Code of Civil Procedure section 664.6 was properly denied because the parties did not agree at any time to settle the case, and cannot be compelled to do so.

**DISPOSITION**

The judgments are affirmed. Defendants shall recover costs of appeal.

GRIMES, J.

WE CONCUR:

BIGELOW, P. J.

WILEY, J.